# CHARLESTON.

## HAMILTON *v.* CANFIELD.

Submitted September 12, 1911.  Decided April 9, 1912.

1.  JUSTICE OF THE PEACE—*Appeal—Answer—Jurisdiction.*

    A defendant in an action before a justice of the peace, who has allowed judgment to be rendered against him by the justice, and taken an appeal to the circuit court, cannot file, in the appellate court, the answer, prescribed by clause XII. of section 50 of chapter 50 of the Code, showing the title to real estate is involved in the action or will be drawn in question.  To avoid the jurisdiction, he must file such answer while the case is in the justice's court.  (p. 630).

2.  SAME—*Appeal—Jurisdiction.*

    On an appeal from the judgment of a justice, the jurisdiction of the appellate court is no broader than that of the justice, as regards the subject matter of the action.  On such an appeal, questions of title to real estate cannot be heard and determined further than the justice was authorized to hear and determine them.  (p. 632).

Error to Circuit Court, Randolph County.

Action by John Hamilton against J. C. Canfield.  Judgment for defendant, and plaintiff brings error.

*Reversed and Remanded.*

*Taylor & Allen,* for plaintiff in error.

*W. B. & E. L. Maxwell,* for defendant in error.

POFFENBARGER, JUDGE:

Plaintiff in error acquired two judgments against the defendant in error in a justice's court for the respective amounts of two negotiable notes, executed by the former to the latter for purchase money of standing timber and subsequently paid by him to third parties, *bona fide* holders thereof without notice, only a day or two after maturity, one having been made payable sixty days after date and the other nine months after date. The judgment for the money paid on account of the first one was recovered before the second became due or was paid.  These re-

coveries were had on the theory of right to restoration of purchase money for the timber, since the defendant failed and refused to convey the same by deed, as stipulated in the written contract of purchase. In each action, a claim for damages was added and some damages recovered. Appeals were taken from both judgments to the circuit court, and consolidated for trial together. There the defendant tendered, and was permitted to file, over the objection of the plaintiff, a plea or answer, verified by his affidavit, in each case, incorporating the contract of sale, showing the note representing the money sued for had been given for purchase money thereunder and claiming the trial would necessarily involve an issue as to the title to the timber and the land upon which it was growing. Thereupon the plaintiff filed an affidavit in each case, denying material and essential averments of fact, set forth in the plea, and, at the conclusion of his testimony, detailing the facts already stated and showing the refusal and inability of the defendant to execute a deed, conveying title to the timber, pointed out as sold, because he was not the owner of it, the court dismissed the actions, without prejudice, upon the theory of lack of jurisdiction, due to an issue of title.

Two grounds of objection to the filing of the plea or answer are urged, (1) it came too late, and (2) it fails to show a question of title.

Jurisdiction in justices to try cases in which title to land is involved is not wholly denied or withheld. It is only qualified and the effect of judgments of justices on titles limited. Section 10 of chapter 50 says a justice shall not have jurisdiction of any suit in which the title to real estate is sought to be recovered, or is drawn in question, except as in the chapter otherwise provided, and declares judgments of justices in actions for trespass or damages to real property or in cases of unlawful detainer shall not bar the title of any party or remedy therefor. Clause XII. of section 50 of that chapter gives the justice jurisdiction of such cases and precludes the defendant from disputing the title of the plaintiff to the premises in question, on his failure to file such an answer as is therein prescribed. This confers no jurisdiction to try questions of title. It only compels a defendant, having the right to a trial of such a question, to elect '

whether he will allow the justice to try the case in which he could raise it in a competent tribunal. His failure to interpose an answer of title is a waiver of his right to prevent such trial and precludes him from raising the question of title on the trial. His defenses are thus limited to other grounds, and the justice does not try that question. Sections 9 and 10 of the chapter expressly confers jurisdiction to try certain classes of cases, involving possessory rights, respecting real estate. These are actions of unlawful detainer and for trespass on real estate or damages to it or to rights pertaining thereto, but the judgments in such actions are not permitted to bar title or remedy therefor.

As to whether the defendant's election must be made once for all in the justice's court, we have no decision in this state; but it seems to have been so held elsewhere. *Lauchner* v. *Rex,* 20 Pa. St. 464, seems to say the objection cannot be made, nor the question of title tried, in the appellate court. The later New York cases hold the action cannot be abated or dismissed on an objection of title in the appellate court, but that the question of title may there be raised and determined, though not set up in the trial before the justice. *Gould* v. *Patterson,* 63 Hun. 575; *Gould* v. *Patterson,* 87 Hun. 533; *Gould* v. *Patterson,* 34 N. Y. Supp. 289. To the same effect is *Douglass* v. *Easter,* 32 Kan. 496. The older New York cases agree with the Pennsylvania case, saying the election must be made in the justice's court once for all, and failure there to elect bars the issue of title in the appellate court.

If the appeal broadens the case, allowing questions of title to be tried in the appellate court, of course, the answer of title comes too late to prevent the jurisdiction of that court. To say the jurisdiction of a court may be defeated, or it may be precluded from trying a case, by showing it has power to try it, would be a contradiction in terms and logic. If the appeal does not broaden the case, the allowance of such an answer to defeat jurisdiction would also run into contradiction and absurdity. On failure to file it before the justice, his jurisdiction is expressly declared and fixed by the statute, and the issue of title barred. The consequence of such failure is, by legislative declaration, that "the defendant shall not be permitted, in his

defense, to dispute the title of the plaintiff to the premises in question." To allow this jurisdictional plea after appeal would be plainly inconsistent with these terms. It would also defeat a judgment recovered in strict pursuit of the statute. Although such an appeal is tried *de novo*, the judgment of the justice is valuable. It gives security for the debt by liens or an appeal bond. The construction here contended for would work serious detriment to that right of the creditor, as it would destroy the security for the time being and, in some cases, forever. Nor does it accord with settled rules of construction. Allowing an election to the defendant, and not withholding jurisdiction, except upon condition, the statute, in strict and definite terms, fixes the time, place and manner of defeating it by such election. Having thus expressed one thing, can the legislature be supposed to have intended other and additional things of similar kind? The authorities answer this in the negative. *Expressio unius est exclusio alterius.* As a plea to the jurisdiction, the answer should have been rejected.

As setting up a defense of title, it could properly have been filed, provided the appeal broadened the case and conferred upon the appellate court jurisdiction to try the question of title. This, too, would conflict with the terms of the statute, saying the defendant shall not be permitted, in his defense, to dispute the title of the plaintiff to the premises in question. That this inhibition extends only to his defense in the justice's court is not sustained by the legislative terms, nor in accord with their letter, and they are comprehensive and positive, obviously in- tended to fix the nature of the controversy and define its limits. And this harmonizes with the general legislative scheme, plainly inhibiting the starting of a title issue in a justice's court. That the circuit courts to which appeals are taken from justices are courts of general jurisdiction, clothed with power to hear and determine questions of title, signifies nothing. The mode of calling their jurisdiction into activity is carefully prescribed by common and statutory law, and does not include entry for such purpose by an appeal from the judgment of a justice, ex- cept in cases falling within the jurisdiction of justices, and, from these, all issues of title are carefully excluded, except in certain cases, and there the judgment on such a question is ex-

pressly limited to certain purposes and not permitted to bar
title or remedy therefor. The general scope and theory of our
practice law, common and statutory, negatives the idea of use
of the justice's court as a door for entry to the circuit courts for
trial of issues not cognizable by the justices, and nothing in
chapter 50 expressly or impliedly authorizes it. The provisions
in section 169, authorizing amendment of the pleadings after
the appeal, to meet the requirements of substantial justice, ad-
mission of all lawful evidence in relation to the matter in dif-
ference, between the parties, whether produced before the jus-
tice or not, and determination without reference to the judgment
of the justice on principles of law and equity, contain no inti-
mation of intent to alter the nature or scope of the controversy.
Every word found in them has ample room for operation and
effect without alteration of the general character of the case after
appeal. This gives vitality and force to the words used with-
out innovation upon positive rules of practice and the general
judicial scheme, and a construction that does so innovate is
not permissible. The meaning of words will be restrained to
avoid such a result, unless the legislative intent is so plain as
to leave no room for doubt. *Ross* v. *Reeves,* 62 W. Va. 7; *Con-
ley and Avis* v. *Coal & Coke Ry. Co.,* 67 W. Va. 129. Limita-
tion of the case on appeal to its general scope before the jus-
tice harmonizes also with the following decisions, declaring lack
of jurisdiction on appeal, consequent upon lack thereof in the
justice's court: *Richmond* v. *Henderson,* 48 W. Va. 389;
*Hughes* v. *Mounts,* 23 W. Va. 130; affirming a dismissal by the
circuit court in a case in which the justice should have done
so.

The statutes governing the practice in Kansas and New York
differ from ours. In the former state, cases in which questions
of title arise are certified by the justice, under express statutory
authority, to the appellate court for trial. The New York
statute now provides that the proceedings in the appellate court
shall be the "same as if the action had commenced in the appel-
late court," except as otherwise provided.

As there were two separate and distinct causes of action,
when these proceedings were begun before the justice, there
was no splitting of a single cause for two actions. The action

for the amount of the first note was commenced before any right of action on account of the second accrued. The small claim for damages seems to have been made twice, rather than split into two parts. At any rate, there was no splitting of a single demand beyond the jurisdiction of the justice.

The judgment of dismissal will be reversed, the objection to the answer of title sustained, said answer stricken out and the cases remanded for trial.

*Reversed and Remanded.*